IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

Case No. 4:22-cv-00030-M

JULIE TORBETT THOMAS,

    Plaintiff,

v.

EAST CAROLINA UNIVERSITY, a constituent institution of the University of North Carolina; and THE UNIVERSITY OF NORTH CAROLINA,

    Defendants.

ORDER

This matter comes before the court on Defendants East Carolina University ("ECU") and The University of North Carolina's ("UNC") motion to dismiss Plaintiff Julie Torbett Thomas's ("Torbett") complaint under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure [DE 16]. She has brought claims against Defendants for sex discrimination and retaliation in violation of Title IX of the Education Amendments of 1972, seeking monetary and equitable relief, including reinstatement and an order requiring ECU to implement remedial and protective steps for Title IX compliance. Defendants seek dismissal of her sex discrimination and retaliation claims as well as her claims for certain damages and equitable relief. For the following reasons, the motion is granted in part and denied in part.

## I. Background

### A. Factual Background

Plaintiffs make the following relevant factual allegations [DE 1]—as distinct from legal conclusions or unsupported inferences—which the court accepts as true at this stage of the

proceedings. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

In 2013, ECU hired Torbett as head coach of its women's volleyball program. She brought considerable experience to the program and achieved record results, including obtaining half of the winning seasons in the history of the university's program. She became ECU's "winningest" coach and was named "coach of the year" in 2017.

In 2016, ECU hired an outside consulting firm to conduct a study on the university's compliance with Title IX. In October 2018, Torbett was serving as ECU's interim senior woman administrator and was able to view parts of the Title IX audit. The audit revealed several areas of noncompliance. ECU's administration planned to address those compliance issues. ECU replaced its athletic director and hired a permanent senior woman administrator in December 2018. But under this new leadership, ECU prioritized locker room renovations for men's basketball and delayed similar renovations for women's volleyball. ECU also publicized the head football coach's first win over Torbett's hundredth.

On November 5, 2019, Torbett met with a representative of ECU's Office of Equity and Diversity. She detailed the apparent discriminatory treatment that she and her program had been receiving; department-wide Title IX violations; and ECU's apparent use of inaccurate data when reporting female athletic opportunities to the federal government for the purpose of decreasing ECU's apparent gender participation gap. She also documented seeming "double standards" imposed on her as a female coach, including her inability to cut players for poor demeanor and evenly discipline them for team rule infractions, even though her male counterparts could do so and otherwise engage in "tough" coaching. During this meeting, Torbett asked that her complaint remain anonymous.

2

Two weeks after she complained, on November 14, 2019, the athletic director informed her that her team could not participate in the post-season tournament if invited. Before, no team had been denied the opportunity to participate in post-season play. A few days later, on November 18, 2019, Torbett reiterated her Title IX concerns with ECU's Title IX director. During the next two months, ECU's senior woman administrator met with Torbett's assistant coach and some of the players of the volleyball team. The senior woman administrator solicited complaints from the student-athletes. She also promised Torbett's assistant coach that she would promote her to head coach if Torbett were fired. Believing ECU had started retaliating against her for submitting her Title IX complaints, Torbett again accused ECU of Title IX violations and retained legal counsel. Through counsel, she sent a letter on January 22, 2020 warning about the risks of gender bias in college athletics. For the next few months, she continued to meet with ECU representatives about her Title IX concerns.

During this time, ECU completed its investigation of her gender bias allegations. The investigation also covered student-athletes' complaints against Torbett. The investigation resulted in a report titled "Review of Allegations and Concerns Made by and about the Women's Volleyball Program," which was formally issued on March 31, 2023. The report found that Torbett created a "toxic" culture within the program, marked by a lack of trust and honesty; that she abused, intimidated, and manipulated her players; and that her student-athletes felt she inconsistently enforced team rules. The report did not find support for Torbett's Title IX concerns.

On March 25, 2020, ECU fired Torbett, claiming she created a "toxic" culture within her program. ECU has not disciplined or fired any of its male coaches for engaging in behavior that was similar to or objectively harsher than Torbett's. One male coach had used excessive foul language, cut a large number of players from his roster, and called his players "sorry asses," yet

3

was not disciplined or investigated for such behavior. ECU replaced Torbett with a male coach who has significantly less coaching experience.

## B. Procedural Background

On March 25, 2022, Torbett filed the instant complaint [DE 1]. She brings claims for sex discrimination and retaliation against Defendants, seeking to redress ECU's violations of her rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"). *Id.* ¶ 1. The remedy she seeks includes monetary damages and equitable relief, including reinstatement as head coach of ECU's women's volleyball program and a decree requiring ECU to create and implement Title IX-compliant policies and practices. *See id.* ¶ 112.

On August 9, 2022, Defendants moved to dismiss her complaint under Rule 12(b)(1) and 12(b)(6) [DE 16]. Defendants argue that she lacks standing to assert any claims based on violations of third-party rights. They argue she is not entitled to a decree requiring ECU to implement any policies and practices. They argue that she fails to state a valid claim for relief based on sex discrimination or retaliation. They lastly challenge her claims for certain damages. *See* DE 17; DE 19. Torbett responded on September 13, 2022 [DE 28], and Defendants replied on October 4, 2022 [DE 31]. This matter is ripe for disposition.

## II. Legal Standard

### A. Rule 12(b)(1)

A defendant may challenge subject-matter jurisdiction in one of two ways: facially or factually. A facial challenge asserts that a complaint does not allege sufficient facts for subject-matter jurisdiction to attach. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The plaintiff bears the burden of establishing the court's jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In making a Rule 12(b)(1) facial challenge, the plaintiff receives the same procedural protections as under a Rule 12(b)(6) motion. *Kerns*, 585 F.3d at 192.

4

**B. Rule 12(b)(6)**

Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement need not be perfect but must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A 12(b)(6) motion tests the sufficiency of this statement. First, the court must accept as true all well-pleaded factual allegations and must draw all reasonable inferences in the nonmovant's favor. *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). However, "bare" factual assertions and "legal conclusions" proffered by the plaintiff need not be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009). Second, the nonmovant's remaining allegations must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Facial plausibility requires enough fact "to raise a right to relief above the speculative level." *Id.* at 555–56 ("[The standard] simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."). A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79; *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). This determination draws on "judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

At this stage, the court is generally limited to the allegations set forth in the complaint and any "documents attached or incorporated into the complaint." *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). A court may also consider a document attached to a motion to dismiss if the document is "integral to" the complaint and its authenticity is not disputed.

*Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016); *see also Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).[1]

## III. Discussion

Ordinarily, this court rules on 12(b)(1) grounds before considering 12(b)(6) arguments. After all, "[f]ederal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). However, Defendants argue this court lacks subject matter jurisdiction only as to Torbett's claims for certain damages and equitable relief. Thus, the court considers whether Torbett states valid claims upon which relief can be granted, Fed. R. Civ. P. 12(b)(6), before addressing whether she has presented a sufficient basis for jurisdiction to attach with respect to her claims for equitable relief, Fed. R. Civ. P. 12(b)(1).

### A. Title IX

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Although Congress did not expressly authorize a private right of action, the statute has been interpreted to support "an implied private right of action." *Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230, 235 (4th Cir. 2021). Title IX has been further interpreted to support both discrimination and retaliation claims. *See, e.g., Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005); *Kashdan v. George Mason Univ.*, 70 F.4th 694, 701 (4th Cir. 2023); *Feminist*

---

[1] As Defendants contend, and without objection from Torbett, the complaint extensively quotes and references the report attached to Defendants' motion. Although the court may properly consider the report without converting the instant motion into a motion for summary judgment, the report has little analytical value because it does not contradict any of the allegations in the complaint. It merely substantiates the complaint's characterization of its findings.

6

*Majority Found. v. Hurley*, 911 F.3d 674, 694 (4th Cir. 2018). Courts import Title VII concepts to analyze Title IX claims. *See Hurley*, 911 F.3d at 694; *see also Preston v. Com. of Va. ex rel. New River Cmty. Coll.*, 31 F.3d 203, 206 (4th Cir. 1994).

Torbett brings a sex discrimination claim, based on a theory of discriminatory discharge, as well as a retaliation claim. But the overarching question at this stage of the proceedings is whether she alleges facts that, "if true, raise a plausible inference that the university discriminated against [her] on the basis of sex." *See Sheppard*, 993 F.3d at 235 (citation omitted). The court considers in turn each of Torbett's theories for recovery.

### i. *Discriminatory Discharge*

"An employment discrimination plaintiff need not plead a prima facie case of discrimination" at the motion to dismiss stage. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *Sierkiewicz v. Sorema*, 534 U.S. 506, 515 (2002)). The plaintiff just has to plausibly "allege facts to satisfy the elements of a cause of action created by that statute." *Id.* (quoting *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015)). To state a valid discriminatory discharge claim, courts have required a plaintiff to plausibly allege "(1) that she is a member of a protected class; (2) that she suffered from an adverse employment action; (3) that she was performing at a level that met her employer's legitimate expectations; and (4) that the position was filled by a similarly qualified applicant outside the protected class." *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 219 (4th Cir. 2016) (cleaned up) (quoting *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003). Torbett sufficiently alleges that she was a high-performing female coach at ECU, but she was fired on the basis of the claim that she was instilling a "toxic" team culture. DE 1 ¶¶ 9, 26–35, 74. Moreover, she plausibly alleges ECU replaced her with a male coach, who had only one year of coaching experience at the collegiate level. DE 1

7

¶¶ 94–95. Under the governing standard, the court must find that she states a plausible claim for discriminatory discharge. *Guessous*, 828 F.3d at 219; *King*, 328 F.3d at 149.

Defendants argue that she has not alleged a sufficient comparator because the male coach who allegedly engaged in similar "toxic" coaching did not receive complaints from student-athletes. DE 19 at 17; DE 31 at 7–8. However, Defendants misconstrue Torbett's claim. Torbett brings a discriminatory discharge claim, which does not require her to allege a sufficient comparator to adequately plead discriminatory intent. *Cf. Bryant v. Aiken Reg'l Med. Centers Inc.*, 333 F.3d 536, 546 (4th Cir. 2003) (explaining that a plaintiff "is not required as a matter of law to point to a similarly situated white comparator in order to succeed on a race discrimination claim"). Although "differing factual circumstances may require adaptation," *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1417 (4th Cir. 1991), Defendants have not shown why the court should treat her claim any differently than the "typical discriminatory discharge case, where a putatively poor-performing employee is terminated and replaced by someone outside the protected class." *Guessous*, 828 F.3d at 219.

Defendants also argue that Torbett "concedes" the existence of a "toxic environment" within the volleyball program and that this concession supports the inference that ECU fired her for a "legitimate, nondiscriminatory" reason. DE 19 at 18–19. Again, Defendants misconstrue the material presented. The allegation on which they rely for her purported concession is that "ECU knew that *any* culture issues" resulted from its "retaliatory actions," which caused discontent among student-athletes and restricted her decision-making authority. *See* DE 1 ¶ 85 (emphasis added). This allegation is not a concession because it is pleaded in the alternative. In any case, Defendants' argument has no force. At this stage of the proceedings, "[i]t doesn't matter if other factors besides the plaintiff's sex contributed to the decision" to fire her; a plaintiff's sex

8

need only be one cause for a "statutory violation to occur[]." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1741 (2020). Her discrimination claim, therefore, must proceed to discovery.

### ii. *Retaliation*

The parties disagree regarding whether Torbett's complaint pleads the requisite causal connection between her initial complaint and her termination. DE 19 at 15–16; DE 28 at 7–8. To sufficiently plead retaliation under Title IX, courts have required that a plaintiff plausibly allege that (1) she engaged in protected activity; (2) that her employer took an adverse action against her; and (3) that a causal connection existed between the protected activity and the adverse employment action. *See, e.g., Hurley*, 911 F.3d at 694. An employee engages in protected activity when her actions oppose suspected Title IX violations. *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015). An employer engages in retaliatory "adverse action" when such action is "materially adverse," sufficient to "dissuade a reasonable person from making or supporting a charge of discrimination." *Hurley*, 911 F.3d at 694 (cleaned up); *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).

For purposes of causation, although courts do not observe a bright temporal line, "two-and-a-half months" between the protected activity and the adverse action "weakens significantly the inference of causation between the two events," unless the plaintiff alleges "additional facts suggesting retaliation." *Wilcox v. Lyons*, 970 F.3d 452, 457 (4th Cir. 2020); *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 650–51 (4th Cir. 2007) (explaining that an employer's decision to strip "significant job responsibilities" like the "authority to set prices" a month after the complaint, coupled with its discussions of termination three months after the complaint, reasonably supported the requisite causal connection). Those "additional facts suggesting retaliation" need not be materially adverse in themselves, as long as they illustrate hostility against the complainant. *See Lyons*, 970 F.3d at 457; *see also Tutt v. Wormuth*, 2021 WL 4076729, at *2 (4th Cir. Sept. 8, 2021)

9

(explaining that "supervisors' repeated comments regarding [the plaintiff's] protected activity and events occurring prior to the adverse action" bridged the "15- or 16-month [temporal] gap").

Torbett alleges she first complained on November 5, 2019, communicating a range of long-held concerns regarding gender equity at ECU. DE 1 ¶ 51. She complained about how ECU has treated her and the volleyball team unfairly over the years; how ECU has inflated its data around female athletic opportunities; and how she has been subject to "double standards" as a female coach. *Id.* ¶¶ 51–52. For at least a portion of those complaints, she invoked confidential information she obtained from an internal audit while she served as ECU's interim senior woman administrator in October 2018. *See id.* ¶¶ 36–37, 51–52. She alleges "additional facts suggesting retaliation," as discussed below, to support the causal connection between her initial complaint and her termination nearly four months later on March 25, 2020.

First, ECU allegedly denied her and her team post-season play two weeks after she complained. *Id.* ¶ 56. The complaint plausibly suggests this employment action was retaliatory because ECU allegedly has not denied post-season play for any of its teams during Torbett's tenure but chose to depart from that longstanding practice just two weeks after it received a complaint about gender bias against its volleyball program.

Defendants argue that the court cannot reasonably infer that ECU's Athletic Director, as the relevant decision-maker, knew Torbett had complained. DE 19 at 17; DE 31 at 4. True, she requested that she remain anonymous. But her initial complaint allegedly accused the athletics department of discriminating *specifically* against the program which she had the special responsibility of championing as its head coach. Her complaint also referenced a wide range of specific facts over a significant course of time, including confidential information concerning the athletics department that she had obtained while serving as an interim administrator. Despite the

10

request for anonymity, context would have plausibly given Torbett away as the complainant. *Cf. Carmack v. Virginia*, 2019 WL 1510333, at \*6 (W.D. Va. Apr. 5, 2019) (explaining that "because the information contained in the complaint was known only to [the complainant], it would naturally be imputed to [him] regardless of whether it was filed anonymously").

Next, ECU's senior woman administrator allegedly solicited complaints from some of the program's players and promised the assistant coach that she would be promoted if Torbett were fired. DE 1 ¶¶ 61–63. Drawing all inferences in favor of Torbett, as the court must at this stage of the proceedings, such conduct acted as primer for ECU to initiate its investigation against her, which supposedly enabled ECU to fire her under the guise of the "toxic" team culture she had instilled within its volleyball program.

Defendants argue that ECU's decision to investigate her cannot be reasonably viewed as retaliatory subterfuge because "ECU fielded not only [her] concerns, but also those of her attorney, the team's players and parents, and others." DE 19 at 15–16 (describing the investigation as a "holistic review"). But ECU allegedly heard from Torbett before its student-athletes. In fact, ECU allegedly sought out those complaints (rather than passively receiving them). Again, this conduct appears to have occurred within the first two months after she initially complained. Thus, the "holistic" nature of ECU's review does not negate the plausibility of Torbett's theory: ECU started to engage in subversive conduct after receiving her complaints, which enabled it to investigate and eventually fire her under pretext. At this stage, she can plausibly show the necessary causal connection to proceed to discovery on her retaliation claim. *See Barnhill v. Garland*, 636 F. Supp. 3d 592, 608 (E.D. Va. 2022) (explaining that "establishing a 'causal relationship' at the prima facie stage is not an onerous burden" (cleaned up)); see also *Strothers v. City of Laurel*, 895 F.3d 317, 335 (4th Cir. 2018) (same).

11

### iii. *Administrative Exhaustion*

Defendants argue—without citation—that Title IX claims require administrative exhaustion. DE 19 at 20. A plaintiff need not exhaust any administrative remedies prior to bringing a private Title IX claim. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255 (2009) ("Title IX has no administrative exhaustion requirement . . . . Plaintiffs can file directly in court under its implied private right of action and can obtain the full range of remedies."); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 708 n.41 (1979) ("[W]e are not persuaded that individual suits are inappropriate in advance of exhaustion of administrative remedies."). Defendants' exhaustion argument is entirely without merit.

### iv. *Emotional Distress, Reputational, and Reliance Damages*

Defendants argue that dismissal of Torbett's prayer for "emotional pain and suffering, indignity, humiliation, embarrassment, inconvenience, damage to her reputation, [and] out-of-pocket expenses" would be appropriate under the Supreme Court's recent decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, *reh'g denied*, 142 S. Ct. 2853 (2022). DE 19 at 21–22; *see also* DE 1 at 16.

Title IX's enactment under the spending power "has implications for [courts'] construction of the scope of available remedies." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287 (1998). Title IX "condition[s] an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds." *Id.* at 286. Thus, to determine whether certain damages are available under an implied right of action brought under Title IX, courts must ask "a simple question: Would a prospective funding recipient, at the time it 'engaged in the process of deciding whether [to] accept' federal dollars, have been aware that it would face such liability?" *Cummings*, 142 S. Ct. at 1571 (quoting *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006)). "[A] federal funding

12

recipient may be considered 'on notice that it is subject not only to those remedies explicitly provided in the relevant legislation, but also to those remedies traditionally available in suits for breach of contract.'" *Id.* (quoting *Barnes v. Gorman*, 536 U.S. 181, 187 (2002)).

Title IX does not expressly authorize emotional distress, reputational, or out-of-pocket damages. *See* 20 U.S.C. §§ 1681–88; 42 U.S.C. § 2000d-7(a)(2). As the Supreme Court held in *Cummings*, there is "no basis in contract law to maintain that emotional distress damages are traditionally available in suits for breach of contract." 142 S. Ct. at 1576. Neither does such basis exist for reputational damages. *See Rice v. Community Health Ass'n*, 203 F.3d 283, 288 (4th Cir. 2000) ("Courts have universally rejected claims for damages to reputation in breach of contract actions . . . ."); *see also Party v. Arizona Bd. of Regents*, 2022 WL 17459745, at *4 (D. Ariz. Dec. 6, 2022) (collecting cases). "When Congress chooses not to provide a private civil remedy" and contract law fails to support the specific remedy sought, this court "should not assume the legislative role of creating such a remedy and thereby enlarge [its] jurisdiction." *Thompson v. Thompson*, 484 U.S. 174, 191 (1988) (Scalia, J., concurring) (citation omitted). The court dismisses Torbett's claims for emotional pain and suffering, indignity, humiliation, embarrassment, inconvenience, and damage to her reputation. However, because contract law has traditionally recognized out-of-pocket expenses as a form of reliance damages, the court allows Torbett's claim for such relief to proceed. Restatement (Second) of Contracts § 349 (1981); *McKague v. HSCGP, LLC*, 2022 WL 3010472, at *4 n.2 (W.D. Va. July 29, 2022).

Torbett argues that *Cummings* does not foreclose her prayer for emotional distress damages because it does not concern Title IX. DE 28 at 12. The opinion makes clear that the Court's logic would apply in all "actions brought to enforce Spending Clause statutes," specifically mentioning Title IX as one such statute. 142 S. Ct. at 1569–70. Torbett also argues that ECU was "on notice"

13

that emotional distress damages were recoverable because it engaged in "intentional acts that clearly violate Title IX." *Id.* (quoting *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 182 (2005)). Torbett's reliance on *Jackson* is misplaced. *Jackson* concerned whether a funding recipient was "on notice that it could be held liable for retaliating against those who complain of Title IX violations." 544 U.S. at 182. The Court held that the funding recipient had sufficient notice that retaliation was actionable under Title IX because its prior decision indicated that the statute supported private suits for "intentional sex discrimination." *Id.* The Court did not decide whether the relief at issue would be traditionally available in a breach-of-contract suit.

## B. Standing

Defendants argue that Torbett lacks standing to assert claims on behalf of ECU's student-athletes and for certain equitable relief. The Constitution limits federal courts to exercise jurisdiction only over "cases" and "controversies." U.S. Const., Art. III, § 2. "'One element of the case-or-controversy requirement' is that a plaintiff 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l*, 568 U.S. 398, 408 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). She "must demonstrate standing for each claim [s]he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008)). To establish standing, she must show an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper*, 568 U.S. at 409.

### i. *Third-Party Rights*

Defendants argue that she does not have standing to assert the rights of student-athletes. DE 19 at 6 (citing *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 251 (5th Cir. 1997) for the proposition that "[i]t is axiomatic that [the plaintiff] cannot state a claim for discrimination on behalf of her students"). Although Torbett claims that Defendants "violated [her] rights, and the

14

rights of ECU's female student athletes" by investigating and retaliating against her, DE 1 ¶ 107, she unequivocally states that she does not bring any claims based on third-party rights. DE 28 at 6. The court denies as moot Defendants' request to dismiss her "Title IX claim and allegations dealing with perceived or alleged gender discrimination concerning student-athletes." DE 16 ¶ 1.[2]

### ii. *Equitable Relief*

Torbett seeks equitable relief, including reinstatement as head coach and a decree generally requiring that ECU submit to a university-wide audit; address all ongoing Title IX violations; implement policies and practices designed to increase gender parity; and provide implicit bias training when assessing "female coaches" and "women's athletic programs." DE 1 ¶¶ 112(a)–(d). She also asks for any "further [equitable] relief under Title IX" for herself and "other females similarly situated." *Id.* ¶ 112(e).

Defendants do not challenge her request for reinstatement; rather, they seek dismissal only as to her request for a compliance decree and further equitable relief as appropriate. Specifically, Defendants argue that she lacks standing to seek such "broad based" equitable relief because "she is no longer employed by ECU." DE 19 at 9–12. Defendants explain that as a former employee, Torbett cannot show an ongoing "concrete harm" or "threat of immediate injury" as required to sustain her request for a compliance decree and further equitable relief. *Id.*[3]

---

[2] The court notes that Defendants moved to dismiss unspecified factual "allegations" concerning Title IX violations against third parties. DE 16 ¶ 1; DE 19 at 10. Factual allegations are not ordinarily subject to dismissal under Rule 12(b) of the Federal Rules of Civil Procedure. Rather, parties typically invoke Rule 12(f) to challenge "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

[3] Although Defendants argue that the court should dismiss her claims for equitable relief because her injury is personal and cannot support relief aimed at redressing third-party injuries, DE 19 at 10, 11–12, this argument has no force because Torbett does not assert any claims based on third-party rights.

15

Torbett does not explicitly argue that she has standing to pursue her claims for the requested relief. She clarifies that she "seeks only equitable relief applicable to the gender discrimination and retaliation claims that she is alleging." DE 28 at 6. She then argues that the court has discretion to grant her requested relief to the extent applicable to her personal claims. *Id.* To illustrate her point, she relies on cases like *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1132 (4th Cir. 1995) (explaining that an injunction prohibiting further harassment is "ordinarily available" for workplace harassment claims) and *Brady v. Thurston Motor Lines*, 726 F.2d 136, 147 (4th Cir. 1984) (finding that a decree enjoining employment practices "in the areas in which the court found discrimination" and imposing a "duty to create nondiscriminatory working conditions" was an appropriate exercise of the court's authority).

Injunctive relief "is an extreme remedy." *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995). To obtain a permanent injunction, a plaintiff must eventually demonstrate (1) that she has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between her and the defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). To have standing for a claim to injunctive relief, the plaintiff must proffer sufficient allegations showing a "real or immediate threat that [she] will be wronged again" in a similar manner, or in other words, a "likelihood of substantial and immediate irreparable injury." *Simmons*, 47 F.3d at 1382 (emphasis omitted) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). Whether she can obtain the relief she requests is a matter for later disposition.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss [DE 16] is GRANTED in part and DENIED in part. The court DISMISSES Torbett's claims for emotional distress and reputational damages. The court ALLOWS the remainder of Torbett's claims to proceed.

SO ORDERED this 21st day of September, 2023.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE